

**SIGNED this 13th day of September, 2019**

                                                                _____
                                                                Shelley D. Rucker
                                                          UNITED STATES BANKRUPTCY JUDGE

_____

# IN THE UNITED STATES BANKRUPTCY COURT FOR
# THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Chiquita Lynette Footes,** | ) | No. 1:19-bk-11844-SDR |
| | ) | Chapter 13 |
| | ) | |
| **Debtor** | ) | |

## MEMORANDUM OPINION

### I.    Factual Background

This matter was before the Court on August 15, 2019 on the chapter 13 trustee's amended objection to confirmation of the debtor's proposed chapter 13 plan. [Doc. No. 30]. The debtor proposed a plan on May 2, 2019, in which creditors Ridge Loan Company, World Finance Corporation, and Credit Central, LLC, were treated as secured creditors under Section 3.2 of the plan. [Doc. No. 2]. The plan also provides that unsecured creditors will receive a pro rata

distribution. [*Id.*] Disclosures regarding Section 3.2 of the plan notify the creditors that their security interests may be affected. In her schedules, the debtor listed Ridge Loan as having a $712 claim secured by personalty valued at $200, Credit Central as having a $727 claim secured by personalty valued at $200, and World Finance as having an $1,113 claim secured by personalty valued at $200. [Doc. No. 1, at 18-19].

On May 9, 2019, creditor Ridge Loan filed a proof of claim, Claim No. 1-1, in which it listed its claim amount as $851.03 for money loaned, but stated in Part 9 that the claim was not secured. On June 13, 2019, creditor World Finance Corporation filed a proof of claim, Claim No. 5-1, in which it listed its claim amount as $1,266.46 for money loaned, but stated in Part 9 that the claim was not secured. On July 3, 2019, creditor Credit Central filed a proof of claim, Claim No. 9-1, in which it listed its claim amount as $884.09 for money loaned, but stated in Part 9 that the claim was not secured. Each proof of claim attaches a signed security agreement referencing unspecified collateral.

The trustee objects to confirmation of the debtor's plan on the basis that the plan treats certain unsecured creditors as secured, thereby unfairly discriminating against different claims within the same class.

## II.    Jurisdiction

The Court has subject matter jurisdiction over this bankruptcy case pursuant to 28 U.S.C. § 1334 and § 157(b)(2)(L). This case and all related proceedings have been referred to this Court for decision, pursuant to 28 U.S.C. § 157(a) and the Standing Order of United States District Court, Eastern District of Tennessee, entered July 18, 1984. Venue is proper based on 28 U.S.C. §§ 1408 and 1409.

These are the Court's findings of fact and conclusions of law, pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure as made applicable to contested matters by Rule 9014.

### III.  Issues

The issues before the Court are (1) whether the different treatment for claims within the same class as proposed in the debtor's plan constitutes unfair discrimination in violation of 11 U.S.C. § 1322(b)(1), and (2) whether the debtor and trustee, in order to resolve the trustee's objection, may alter the treatment of Ridge Loan, World Finance, and Credit Central proposed in the plan and proceed to confirmation without notifying the creditors of those amendments. The trustee has amended her objection to the plan based on unfair discrimination and has now served the three creditors at issue, as required by Federal Rule of Bankruptcy Procedure 7004. No creditors appeared in response to the amended objection.

### IV.  Law and Analysis

#### a.  *Should the claims at issue be allowed as unsecured?*

The Court must begin with the question of whether the claims of the three creditors whose treatment is at issue are in the same class as the unsecured creditors. The debtor has sworn in her schedules that these creditors were secured. [Doc. No. 1 at 18-19]. The security agreement attached to each proof of claim partially supports that classification. The lack of a description of the collateral in each proof of claim calls into question whether the security agreement ever attached or whether any actual collateral was ever identified. Under Tennessee Code Annotated § 47-9-203(b)(3)(A), an enforceable security agreement requires a description of the collateral.

Even assuming a description of the collateral exists and the security interest is enforceable, a secured creditor has a right to "[choose] to file an unsecured claim" and "can waive its right to claim it is secured if it files an unsecured claim." *In re Taylor*, 280 B.R. 711, 716 (Bankr. S.D.

Ala. 2001) (citing *Gardner v. Chicago Title & Trust Co. (In re O'Gara Coal Co.),* 12 F.2d 426, 429 (7th Cir. 1926); *In re Krahn,* 124 B.R. 78 (Bankr. D. Minn. 1990)); *see also Dooley v. Weil (In re Garfinkle),* 672 F.2d 1340, 1347 (11th Cir.1982) ("A party may waive any right which it is legally entitled to, including rights secured by contract."). The Bankruptcy Code permits a secured creditor to pursue several "avenues of action," including to "surrender or waive his security and prove his entire claim an unsecured one[ ] or . . . avail himself of his security and share in the general assets [of the bankruptcy estate] as to the unsecured balance of the debt." *In re Bailey*, 664 F.3d 1026, 1029 (6th Cir. 2011) (quoting *U.S. Nat'l Bank in Johnstown v. Chase Nat'l Bank of N.Y.C.,* 331 U.S. 28, 33, 67 S.Ct. 1041, 91 L.Ed. 1320 (1947)) (quotation marks in original omitted). A creditor may not later "disavow that choice and proceed down a different path." *In re Bailey*, 664 F.3d at 1029.

The Court does not dispute a creditor's right to elect to waive its secured status by filing an unsecured claim. A proof of claim filed in accordance with the Federal Rules of Bankruptcy Procedure constitutes prima facie evidence of the validity and the amount of the claim. Fed. R. Bankr. P. 3001(f). Absent an objection by a party, a proof of claim filed by a creditor is deemed allowed. 11 U.S.C. § 502(a). Ridge Loan, World Finance, and Credit Central each have filed a claim as unsecured, and no party has objected to any of those claims. Therefore, the claims will be allowed as unsecured claims and would appear to be in the same class as the other unsecured claims.

### b. *May the debtor treat the claims at issue differently than other unsecured claims?*

Section 1322(b)(1) provides that a chapter 13 plan may "designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated. . . . " The statute's prohibition against unfair discrimination

4

"implies that discrimination is permissible as long as it is not 'unfair.' " 1 HON. W. HOMER DRAKE, ET AL., CHAPTER 13 PRACTICE AND PROCEDURE, § 7:10, at 673 (2d ed. 2019). "Discrimination is said to be unfair when there is no valid reason to prefer one group of unsecured claims over another." *In re Williams*, 253 B.R. 220, 224 (Bankr. W.D. Tenn. 2000) (citing *Groves v. LaBarge (In re Groves),* 39 F.3d 212, 215 (8th Cir.1994); *McDonald v. Sperna (In re Sperna),* 173 B.R. 654, 658 (9th Cir. BAP 1994); *In re Coonce,* 213 B.R. 344, 346 (Bankr. S.D. Ill. 1997)).

The question of whether discrimination is unfair "lies within the discretion of the bankruptcy judge and is to be made on a case by case basis." *In re Williams*, 253 B.R. at 226 (citing *In re Groves,* 39 F.3d at 214; *In re Dodds,* 140 B.R. 542, 544 (Bankr. D. Mont. 1992); *In re Freshley,* 69 B.R. 96, 97 (Bankr. N.D. Ga. 1987)). In addressing this question, courts often have begun their analysis by applying the following four-part test: "(1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without the discrimination; (3) whether the discrimination is proposed in good faith; and (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination." *Jordahl v. Burrell (In re Jordahl)*, 539 B.R. 567, 573 (8th Cir. BAP 2015), (quoting *In re Leser*, 939 F.2d 669, 672 (8th Cir. 1991)); *see also In re Williams*, 253 B.R. at 226, n.1 (stating that the test provided in *Leser* "is the test most commonly used by courts to determine whether proposed discrimination is unfair") and 1 HON. W. HOMER DRAKE, ET AL., CHAPTER 13 PRACTICE AND PROCEDURE, § 7:10, at 674 (2d ed. 2019).

In selecting a framework for its analysis of this issue, the Court finds the discussion of the Bankruptcy Court for the Eastern District of Michigan helpful. That court explained that, "[a]fter considering [the *Leser*] test and others, another court developed its own 'streamlined test' which asks: '(1) Is there a good faith, rational basis for the separate classification; (2) Is the separate

5

classification necessary to the debtor's rehabilitation under Chapter 13; and (3) Is there a meaningful payment to the discriminated class.' " *In re Quinn*, 586 B.R. 1, 5 (Bankr. E.D. Mich. 2018) (quoting *In re Belton*, No. 16-03040-JW, 2016 WL 7011570, (Bankr. D.S.C. October 13, 2016)). In determining which test to apply, the court also considered that " '[t]he various tests seem too inflexible to properly reflect the discretion that this Court has with respect to confirmation of a Chapter 13 plan that contains a separately classified creditor,' " and that "the tests can function as a starting point for the court's analysis, but should not be a barrier to confirmation of a Chapter 13 plan." *Id.* (quoting *In re Engen*, 561 B.R. 523, 538 (Bankr. D. Kan. 2016)). Further, while courts have used a variety of tests and approaches to determine unfair discrimination, " 'nearly all tests involve considering the totality of the circumstances in each case.' " *Id.* (quoting *In re Kindle*, 580 B.R. 443, 451 (Bankr. D.S.C. 2017)).

The *Quinn* court adopted the totality of the circumstances inquiry to determine whether favorable treatment of student loan debt in a chapter 13 plan constituted unfair discrimination and considered the application of the streamlined test set forth in *Belton. Id.* at 6. This Court will also adopt a totality of the circumstances inquiry, starting with *Belton's* three-pronged analysis to determine whether the debtor's plan, which proposes to treat allowed unsecured claims as secured creditors under plan Section 3.2, is unfairly discriminatory.

There was a reasonable, good faith basis for treating these creditors as secured when the plan was filed. The debtor's counsel recalled that the debtor had told him that she pledged collateral to secure the debt, but she did not remember what she pledged. Because the plan treatment had to be proposed before a claim was filed, the debtor's attorney wanted to avoid the time and trouble of an amendment if the creditor later filed a claim that demonstrated that it was secured. To avoid that situation, the debtor proposed to treat these creditors as secured with a small amount of debt.

However, in light of the creditors' seeming waiver of their secured status, the debtor cannot meet the second prong. The debtor can achieve confirmation of the plan and rehabilitation without discriminating. These three creditors have now filed unsecured claims, and the Court has held that a creditor may waive its secured status by filing an unsecured claim. A separate classification is not necessary. Because the second factor is not met, the Court does not need to address whether there is a meaningful payment in order to discriminate against the class.

The Court is sympathetic that its decision will require an amendment. The debtor's counsel had to make a call on the status of the claims before the claims were filed. A plan amendment requires additional time and expense on the part of a debtor and his or her attorney. Avoidance under 11 U.S.C. § 522(f) is unavailable unless the collateral at issue is household goods, and the debtor could not remember exactly what she pledged. The only remaining method of lien avoidance for the debtor is an adversary proceeding under 11 USC § 544, an even more expensive procedure. In a different case, a debtor's attorney might demonstrate that some de minimis payment or small payment reflecting the value of used household goods might justify discrimination. The Court is not ruling out creative solutions that still provide the notice required for due process.

Having found, in this case, that the debtor has not carried her burden of proof to demonstrate that the discrimination is fair, the Court will deny confirmation of the plan as it currently exists.

    c.    ***May the debtor may resolve the trustee's objection by striking secured treatment of the claims from plan Section 3.2?***

The above holdings take the Court to the final issue of whether the debtor may simply resolve the trustee's objection by making changes on the face of the plan before confirmation, a

remedy which is frequently used to resolve other objections. The problem in this case is that the affected creditors are not among the parties consenting to the change.

In her amended objection, the trustee cites *In re Taylor,* 280 B.R. at 716. In that case, a creditor held a promissory note secured by a first mortgage on the chapter 13 debtors' homestead. *Id.* at 713. Prior to confirmation of the debtors' plan, the creditor filed an unsecured nonpriority claim. *Id.* "The debtors' plan did not specifically state how [the creditor would] be treated other than stating all debts would be paid 100%." *Id.* The debtors made their payments as promised. *Id.* With less than three months of payments remaining before the case was paid off, the creditor filed a proof of claim secured by real estate, based on the same note and mortgage as its earlier claim. *Id.* The debtors objected. *Id.* at 712. In considering the debtors' objection, the bankruptcy court noted that the creditor had had an opportunity to object to its treatment in the debtors' original plan and a modified plan but did not. *Id.* at 714. In a footnote, the bankruptcy court also noted that the creditor "had no notice whatsoever that it could rely on any secured claim to be paid in full." *Id.* at 715, n.2. The *Taylor* court held that the creditor "waived its right to assert that it has a secured claim by its act of filing an unsecured claim in the first place," but it also considered whether the creditor filed its claim through ignorance or mistake. *Id.* at 716 (citing *In re O'Gara Coal Co.,* 12 F.2d at 429); *see also In re Meade Tool & Die Co.*, 164 F.2d 228, 230 (6th Cir. 1947) (permitting a creditor who had filed a claim as unsecured to amend the claim to assert secured status where substantial justice so requires).

By contrast, in the current case, creditors Ridge Loan, World Finance, and Credit Central have received notice of a proposed plan in which they are treated as having a secured claim under Section 3.2. A modification by simply striking through the related provisions in Section 3.2 at a meeting of creditors does not provide a creditor with notice that its lien may be avoided. In chapter

8

13, notice to all creditors of the debtor's proposed plan and the creditor's opportunity to object are required by Rule 2002 and 3015 of the Federal Rules of Bankruptcy Procedure, as well as E.D. Tenn. LBR 3015-1(b). To satisfy due process, adequate notice requires a creditor to receive a copy of the plan and be given notice of its opportunity to object and of the confirmation hearing. *In re Williams,* 276 B.R. 899, 907 (C.D. Ill. 1999).

Though certain modifications to a proposed plan are permitted prior to confirmation, a "secured claim holder is entitled to notice of any material changes and an opportunity to object[.]" KEITH M. LUNDIN & WILLIAM H. BROWN, CHAPTER 13 BANKRUPTCY, § 101.2 at ¶ 8 (4th ed. 2010); *see also* 11 U.S.C. § 1323(c). Failure to give notice of a material change to a creditor's treatment under a plan and an opportunity to object to confirmation may make such a plan vulnerable to a later challenge by the creditor as to the binding effect of a plan under 11 U.S.C. § 1327(a). Unlike the creditor in *Taylor*, these creditors have not received notice that they are being treated as unsecured.

The Court finds the proposed change is a material change. Therefore, the Court will not allow the debtor to resolve the trustee's objection by making a change on the face of the plan that would alter the creditors' treatment from secured to unsecured. Additional notice is required.

**V.     Conclusion**

The Court finds that the trustee may rely upon the creditors' claims filed as unsecured to object to the plan on the basis of unfair discrimination. However, a proof of claim is insufficient to serve as a waiver of the right to notice of a material plan change. Given the current facts at issue in this case, the debtor should have an opportunity to file an amended plan. Accordingly, the trustee's amended objection to confirmation is SUSTAINED, and the Court has allowed the debtor 10 days to file an amended plan.

The Court delivered this opinion orally on the record on August 15, 2019 and entered an order denying confirmation on August 21, 2019. [Doc. No. 36]. Because the Court's findings of fact and conclusions of law may be helpful to practitioners in preparation of plans, this Court has prepared a written opinion. To the extent that there are differences in the written and oral opinion, the written opinion supersedes the oral opinion.

###